*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID MICHAEL MORENCE,

      Defendant-Appellant.

UNPUBLISHED
February 27, 2020

No. 344527
Shiawassee Circuit Court
LC No. 2018-002420-FH

Before: BORRELLO, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of possession with intent to deliver methamphetamine, MCL 333.7401. We affirm.

## I. BACKGROUND

Defendants' conviction results from his intended drug trafficking. About January 2018, defendant and his codefendant, Nancy Jo Spencer, came under suspicion of narcotics activity and were being investigated by MAGNET, a narcotics task force. On the evening of January 30, 2018, MAGNET officers were surveilling a home occupied by defendant and Spencer and observed the codefendants leave the home and drive in the direction of Flint, returning approximately one hour later. The trip was consistent with making a quick stop in Flint and then returning.

During the return trip, Michigan State Trooper Dennis McGuckin pulled over defendant and Spencer, indicating that his reason for doing so was a defective tail light. Trooper McGuckin noticed that the codefendants made frequent, suspicious movements. When Trooper McGuckin questioned the codefendants about their travel, they provided various, differing answers. At one point, defendant indicated that he and Spencer were returning from a pawn shop "at the corner of M-21 and Court Street." The parties do not dispute that there exists no pawn shop at that location; however, defendant argues that there is a pawn shop in that general vicinity. Eventually, several MAGNET members arrived on the scene to search the vehicle. The search returned a bag containing roughly an ounce of methamphetamine in the passenger door and a second bag containing roughly half of a gram of methamphetamine in Spencer's purse. MAGNET Detective

Matthew Fray testified that the ounce of methamphetamine would typically sell for between $2,500 and $3,000.

The codefendants were each charged with possessing methamphetamine with the intent to deliver. Per a plea deal, Spencer was convicted of one count of possession of methamphetamine. Defendant entered a plea of not guilty. During trial, the prosecution sought to admit 258 pages of text-message data extracted from Spencer's cell phone which tended to implicate Spencer and defendant in drug trafficking. The prosecution argued that these statements were admissible as either nonhearsay statements or as party-opponent coconspirator statements under MRE 801(d)(2)(E). The trial court allowed the admission of the exhibit, finding that the statements made by Spencer were admissible under MRE 801(d)(2)(E) and that the third-party statements were otherwise not hearsay and were therefore admissible.

The jury found defendant guilty of possessing methamphetamine with the intent to deliver. At defendant's sentencing hearing, the trial court assessed ten points under offense variable (OV) 19, indicating that defendant had interfered with the administration of justice by giving a false statement to Trooper McGuckin. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 260 to 500 months of imprisonment, which represented the upper limit of defendant's sentencing-guidelines range. This appeal followed.

## II. ANALYSIS

## A. HEARSAY STATEMENTS

Defendant first argues that the trial court erred by admitting the text messages extracted from Spencer's cell phone into evidence. According to defendant, the text messages were inadmissible hearsay and were unduly prejudicial and their admission violated his constitutional confrontation right. We disagree. "[W]e review a trial court's decision to admit evidence for an abuse of discretion, but review de novo preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014).

Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is generally inadmissible except as provided by the rules of evidence. MRE 802. A statement against a party is not hearsay, however, despite conforming to the general definition provided by MRE 801(c), if it is made "by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy." MRE 801(d)(2)(E). To qualify as nonhearsay under MRE 801(d)(2)(E), the proponent of the statement must show that it satisfies three requirements:

> First, the proponent must establish by a preponderance of the evidence that a conspiracy existed through independent evidence. A conspiracy exists where two or more persons combine with the intent to accomplish an illegal objective. It is not necessary to offer direct proof of the conspiracy. Instead, it is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. Circumstantial evidence and inference may be used to establish the existence of the

conspiracy. Second, the proponent must establish that the statement was made during the course of the conspiracy. The conspiracy continues until the common enterprise has been fully completed, abandoned, or terminated. Third, the proponent must establish that the statement furthered the conspiracy. The requirement that the statement further the conspiracy has been construed broadly. Although idle chatter will not satisfy this requirement, statements that prompt the listener, who need not be one of the conspirators, to respond in a way that promotes or facilitates the accomplishment of the illegal objective will suffice. [*People v Martin*, 271 Mich App 280, 316-317; 721 NW2d 815 (2006) (internal citations and quotation marks omitted).]

Regarding the first requirement, in making her plea, Spencer indicated that she and defendant drove to Flint to purchase methamphetamine. The trip took only an hour, which would be consistent with a prearranged pickup. According to Spencer, she purchased the methamphetamine for $625; yet, Trooper McGuckin testified that the ounce of methamphetamine would sell for between $2,500 and $3,000. The disparity between purchase price and sale value is evidence of a wholesale purchase made for the purpose of further packaging and distribution. Accordingly, a preponderance of the evidence supported that defendant and Spencer engaged in a conspiracy to purchase and sell methamphetamine.

Concerning the second requirement, defendant argues that the text-message statements were not made during the course of the conspiracy, particularly the statements Spencer made before the alleged commission of the instant crime. We disagree. "To satisfy the 'during the course' aspect of the exception, the conspiracy must be extant at the time the statement is made. The phrase relates to the temporal dimension of the conspiracy, which continues until the common enterprise has been fully completed, abandoned, or terminated." *People v Bushard*, 444 Mich 384, 394; 508 NW2d 745 (1993). In making this argument, defendant appears to imply that any conspiracy did not exist until the night of the instant offense. The messages, however, indicate that the possession at issue was just one instance in defendant and Spencer's ongoing scheme to traffic methamphetamine. Spencer's prior relationship with the apparent wholesaler of the substance, MAGNETS' involvement with defendant and Spencer, and the fact that defendant and Spencer obtained a distributable quantity of methamphetamine in the apparent span of an hour also imply a broader conspiracy. In short, given the evidence produced in this case, it is illogical to conclude that the conspiracy to purchase and distribute methamphetamine started and ended on the night of the arrest.

Finally, defendant argues that the statements were too vague to further a conspiracy and amounted to nothing more than idle chatter. Per our review of the messages, there is no doubt that drug trafficking is being discussed. The messages refer to the sale of substances in grams, to the cutting of substances, and to the quality of substances, among other similarly suspicious references. Several statements use the term "we" in conjunction with apparent sales. There is simply nothing in the record that would lead us to a finding that Spencer sent these messages for anything other than to further the distribution conspiracy. Accordingly, the trial court did not err by concluding that Spencer's statements in the messages were not hearsay pursuant to MRE 801(d)(2)(E).

Turning to whether the text-message statements made by third parties were properly admitted, we conclude that defendant has abandoned this argument because he has failed to provide any particularized challenge to the statements. The entirely of the exhibit contains 258 pages of extracted cell phone data, and the specific excerpts provided to this Court contain 17 pages of text messages exchanged between Spencer and various third parties. Defendant's brief references only a few third-party statements and does so in the context of his argument under MRE 801(d)(2)(E). Defendant has failed to provide any particularized argument regarding how the trial court erred in concluding that the third-party statements were not hearsay under the general hearsay definition. A defendant may not simply "announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (internal citation and block notation omitted). Accordingly, we decline to address this argument.

Defendant also argues that admission of the text-message statements violated his constitutional right to confront and cross-examine witnesses. We disagree. The Confrontation Clause applies only to "testimonial" statements used as substantive evidence in a criminal prosecution. *People v Nunley*, 491 Mich 686, 697-698; 821 NW2d 642 (2012) (quotation marks and citation omitted). "While nontestimonial statements are subject to traditional rules limiting the admissibility of hearsay, they do not implicate the Confrontation Clause." *People v Taylor*, 482 Mich 368, 377; 759 NW2d 361 (2008). Statements are testimonial when they are intended "to establish or prove past events potentially relevant to later criminal prosecution." *Id*. at 377-378 (internal citation and quotation marks omitted). There is nothing in the challenged exhibit which would cause this Court to believe that the declarants made the statements intending to create any record for a subsequent criminal prosecution; rather, the clear intent of the statements appears to be the furtherance of drug transactions. The statements do not violate the Confrontation Clause.

Next, defendant argues that the text messages should have been precluded as unduly prejudicial under MRE 403. "Exclusion is required under MRE 403 when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018) (internal citation and quotation marks omitted). In this case, defendant was charged with possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*). The messages tended to show that defendant and Spencer had an established drug-trafficking operation and were admitted to show that defendant possessed the methamphetamine with the intent to deliver it. These statements were highly probative on this issue, particularly because several messages implicated defendant as a supplier of the drug to third parties. Defendant has shown no relevant prejudicial concern in these messages which would outweigh their probative value on the issue of intent. In short, because the messages were highly probative on an element of the crime, MRE 403 did not require their exclusion.

Because we reject defendant's substantive arguments regarding the admission of the text messages, we also reject defendant's argument that his trial counsel provided ineffective assistance by failing to raise adequate objections to the evidence. *People v Sabin (On Second Remand)*, 242 Mich App 656, 660; 620 NW2d 19 (2000).

## B. OV 19

Defendant argues that the trial court improperly scored OV 19 at 10 points. The proper interpretation and application of the sentencing guidelines is a legal question that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019) (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

MCL 777.49(c) directs trial courts to assess 10 points under OV 19 if the defendant "interfered with or attempted to interfere with the administration of justice." "Attempting to deceive the police during an investigation" constitutes interference with the administration of justice. *People v Hershey*, 303 Mich App 330, 344; 844 NW2d 127 (2013). Defendant argues that a preponderance of the evidence did not show that he attempted to deceive the police. We disagree. When Trooper McGuckin asked defendant where he was traveling from, defendant provided several inconsistent answers, including saying that he was at a pawn shop that did not exist at the stated location. Defendant's coconspirator also provided inconsistent statements. When viewed in light of the other evidence, particularly the fact that defendant and Spencer made a stop-and-return trip to Flint, had a distributable amount of methamphetamine in their possession, and were actively engaged in drug trafficking, we cannot disagree with the trial court that it is more likely than not that defendant offered Trooper McGuckin a false location to hide the fact that he was in Flint to procure methamphetamine. The trial court properly scored OV 19 at ten points.

## C. PROPORTIONALITY

Finally, defendant argues that his 260-month minimum sentence, which represents the top of defendant's sentencing-guidelines range of 78 to 260 months, violates the principle of proportionality set forth *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990) and reaffirmed in *Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 and *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017). As already noted, however, defendant's sentence falls within the appropriate sentencing-guidelines range. Despite any inclination we may have to review defendant's sentence for reasonableness, our Supreme Court has directed—by way of declining leave to appeal in *People v Ames*, unpublished opinion of the Court of Appeals issued August 10, 2017 (Docket No. 333239), see *People v Ames*, 504 Mich 899; 929 NW2d 283 (2019)—that sentences falling within the sentencing-guidelines range must be affirmed on appeal "unless there was an error in scoring or the trial court relied on inaccurate information." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173, 181 (2016); see also MCL 769.34(10). Because defendant has failed to show that the trial court erred in scoring the sentencing guidelines or relied on any inaccurate information when sentencing defendant, we must affirm his within-guidelines sentence. Moreover, given *Ames*, 504 Mich 899, we reject defendant's argument that

his trial counsel was ineffective for failing to raise the proportionality issue at sentencing.  *Sabin,*
242 Mich App at 660.

Affirmed.

/s/ Stephen L. Borrello
/s/ Patrick M. Meter
/s/ Michael J. Riordan