*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

LAQUAN JOHNSON,

       Defendant-Appellant.

UNPUBLISHED
June 11, 2025
10:01 AM

No. 369718
Genesee Circuit Court
LC No. 00-007029-FC

Before: YATES, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

In 2001, a jury convicted defendant, who was 17 years old at the time of the offenses, of second-degree murder, MCL 750.317; armed robbery, MCL 750.529; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant to concurrent terms of life imprisonment with the possibility of parole for his second-degree murder conviction, 39 to 75 years' imprisonment for his armed robbery conviction, and 32 to 48 months' imprisonment for his larceny conviction. The trial court also sentenced defendant to two years' imprisonment for his felony-firearm conviction, to run consecutively to his other sentences. Following the Michigan Supreme Court's decision in *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022), defendant sought relief from judgment, arguing that he was entitled to resentencing because he was 17 years old at the time of the offense and sentenced to life imprisonment with the possibility of parole. The trial court resentenced defendant to serve concurrent terms of 24 to 45 years' imprisonment for second-degree murder and 15 to 24 years' imprisonment for armed robbery, and a consecutive term of two years' imprisonment for felony-firearm. Defendant appeals as of right, arguing that his sentence for second-degree murder is disproportionate and unreasonable in light of his circumstances and the offense. We affirm.

---

[1] Defendant was also convicted of larceny in a building, MCL 750.360, but we vacated this conviction in a previous appeal. *People v Johnson*, unpublished per curiam opinion of the Court of Appeals, issued February 3, 2004 (Docket No. 237200).

## I. BACKGROUND

In July 2000, when defendant was 17 years old, he and his codefendant, Cortorian Gale, entered into the victim's home in Flint, Michigan, wearing masks. The victim's minor children, cousins, and nephews were sleeping in the home when defendant and Gale entered. Defendant and Gale woke the children up at gunpoint, warning the children to do as they were told or they would be shot. Defendant and Gale moved the children into a room in the back of the home, next to the victim's bedroom. While the children were secured in the room, defendant and Gale woke the victim at gunpoint and demanded money, guns, and drugs, each pointing their respective weapons at the victim. Defendant and Gale forced the victim into the basement to retrieve various items before they returned the victim to his bedroom. Following a struggle between defendant and the victim, Gale shot the victim in the chest, after defendant's gun misfired. After the shooting, defendant and Gale ransacked the victim's home and left in the victim's vehicle. Emergency responders confirmed that the victim died at the scene of the shooting.

In July 2022, the Michigan Supreme Court decided *Stovall*, 510 Mich at 322, holding that sentences of life with the possibility of parole for second-degree murder, imposed on a defendant who was a juvenile at the time of the offense, constituted cruel or unusual punishment. Defendant moved for a relief from judgment in light of *Stovall*, arguing that he was entitled to resentencing. The trial court agreed with defendant and granted his request for resentencing following *Stovall*.

At resentencing, defense counsel emphasized defendant's age at the time of the offense, defendant's improved behavior in prison, defendant's participation in prison programming, defendant's family support, and the results of defendant's independent psychological evaluation and criminogenic risk assessment. Defendant told the court that he was a different person at resentencing than he was at the time of the offense, and defendant acknowledged the impact of his decisions at that time. Defendant emphasized that he was not a danger to his community and was a better person. The trial court considered defendant's criminal history, his age at the time of the offense, the nature of the offense, and the reports defendant provided for resentencing. The trial court sentenced defendant within the sentencing guidelines range to 24 to 45 years' imprisonment for his second-degree murder conviction.

## II. STANDARD OF REVIEW

"This Court reviews the proportionality of a trial court's sentence for an abuse of discretion." *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021) (quotation marks and citation omitted). "A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality . . . ." *Id*. (quotation marks and citation omitted; ellipsis in original). "[T]he principle of proportionality simply requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Id*. at 501 (quotation marks and citations omitted).

## III. ANALYSIS

Defendant argues that his sentence for second-degree murder was disproportionate to his circumstances and the offense. We disagree.

Michigan's sentencing guidelines are now advisory, but trial courts must still consult the guidelines and take them into account during sentencing. *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). When appellate courts review a within-guidelines sentence for proportionality, "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate[.]" *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023). "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted). "The principles that guide proportional sentencing in our state are: '(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses.' " *People v Bennett*, 335 Mich App 409, 418; 966 NW2d 768 (2021), quoting *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972).

> Factors that may be considered by a trial court under the proportionality standard include, but are not limited to:
>
> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).]

Defendant argues on appeal that his sentence for second-degree murder is disproportionate because the sentencing guidelines did not consider defendant's recent behavior in prison, defendant's education achievements, or other positive factors. This argument is not supported by the record. At defendant's resentencing, the trial court evaluated the information defendant provided, stating:

> You know, as [defendant's counsel] has pointed out before, your prior record, all zeros and no's across the board except for the juvenile record. A ninth-grade education. I did read the descriptions, the narratives of the subject incident. And you were 17 years old at the time of the crime, legally an adult. And I did read [defendant's counsel's] written memorandum on resentencing here. It was very thorough, very informative, and I like to hear from the experts, and I did with this report.
>
> And the Court has to determine bottom line whether you are irreversibly or irreparably corrupt, okay? And based upon what I've heard and what I've read, I don't find you to be irreversibly or irreparably corrupt, okay? That you do—that you have the capability to be redeemed and a member of society again.

It is clear from the record that the trial court explicitly considered defendant's age at the time of the offense, defendant's minimal criminal record before the offense, and defendant's psychological evaluation and criminogenic risk assessment. Defendant's psychological evaluation and criminogenic risk assessment provided that defendant's crimes reflected a youth that lacked

appropriate guidance and judgment, but they emphasized that defendant had since demonstrated the ability to make better choices and learn from his past mistakes. The evaluation and assessment acknowledged defendant's misconduct tickets during his incarceration, and they noted defendant's recent behavioral improvements. Defendant's presentence investigation report (PSIR) provided that defendant had 36 misconduct tickets between 2002 and 2018, including tickets for sexual misconduct, possession of a weapon, substance abuse, assault and battery (staff victim), destruction/misuse of property, possession of dangerous contraband, and theft.

In addition to these facts, the trial court considered descriptive and narrative accounts of the offense, in which defendant and Gale woke the victim's minor cousins, nephews, and children up at gunpoint before forcing the victim to retrieve items from the basement at gunpoint. After defendant and Gale retuned the victim to his room, the victim struggled with defendant and Gale shot the victim in the chest. The victim was in a room next to the children when Gale shot him, and as a result, the children heard the victim choking and gagging on blood before he died. The trial court sentenced defendant to 24 to 45 years' imprisonment for the second-degree murder conviction, noting that defendant could be released approximately two years after his resentencing. In light of the trial court's statements during resentencing, the record demonstrates that the trial court appropriately balanced the seriousness of the offense, defendant's conduct in custody, and defendant's potential for rehabilitation. "[A] trial court has been given broad discretion, within limits fixed by law, to tailor a sentence to the circumstances of each case and each offender, in an effort to balance society's need for protection against its interest in rehabilitation of the offender." *People v Sabin (On Second Remand)*, 242 Mich App 656, 661; 620 NW2d 19 (2000). Defendant has not demonstrated that the trial court failed to consider relevant factors when resentencing him or that the trial court improperly considered and balanced these factors when sentencing defendant. See *id*.

Defendant next argues on appeal that his sentence was disproportionate and unreasonable because the sentencing guidelines range was too wide, leaving the trial court with no real guidance when sentencing defendant. However, defendant's sentencing guidelines range of 225 to 375 years was a result of defendant's criminal history and the nature of the offense. The Legislature designated second-degree murder as an "M2" felony offense, MCL 777.16p, and Level III-C for an M2 felony directs a recommended minimum sentence range of 225 to 375 months for a defendant who is not a habitual offender, MCL 777.61. "Under the Michigan Constitution, the Legislature is vested with the authority to 'provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences.' " *People v Mason*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367687); slip op at 2, quoting Const 1963, art 4, § 45. Accordingly, "[w]here the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). The trial court was authorized to impose a sentence that was within the range of 225 to 375 months as provided by MCL 777.61. See *id*.

Finally, defendant argues that the trial court lacked any guidance as to a "typical" sentence for defendant's second-degree murder conviction because comparable defendants in second-degree murder cases within Genesee County received significantly different sentences than he did. Defendant provided details from five second-degree murder cases he believed were comparable to his, noting that the sentences varied from a range of 8 to 22 years to a range of 20 to 40 years. The

cases defendant references, however, involved a plea agreement, a sentence agreement, or a *Cobbs*[2] agreement. In addition to the various plea and sentence agreements in each case, one defendant was 16 years old at the time of the offense, another defendant pleaded "no contest–mentally ill," and a third defendant agreed to testify against his codefendants. In the present case, defendant also did not enter into a plea agreement or a sentence agreement, nor did he make any agreement to testify against Gale in exchange for a reduced sentence. The circumstances of defendant's case are different from those of the five cases he uses to support his argument, and he cannot establish that these cases are "typical" for purposes of his argument. Accordingly, defendant has not overcome the presumption that his within-guidelines sentence is proportionate and reasonable in light of defendant's conduct in prison, defendant's likelihood of rehabilitation, and the nature of the offense. See *Posey*, 512 Mich at 359.

In summation, we find that defendant's assertions that the trial court did not undertake a careful assessment of the circumstances of this case, and that the sentence imposed was unreasonable, are completely without merit. We again note that, as a result of the Supreme Court's decision in *Stovall*, and the resentencing order entered by the trial court, defendant went from facing a life sentence for his second-degree murder conviction to a sentence that would make him eligible for parole approximately two years after resentencing. Any suggestion by defendant that he has been treated unreasonably in this matter rings hollow.

Affirmed.


/s/ Christopher P. Yates
/s/ Adrienne N. Young
/s/ Randy J. Wallace

---

[2] *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993).